Curia, per

Whitner, J.
This was an action of trespass quare clausum fregit, and, as set out in the report, involved the question of title.
The verdict was for the defendants, the jury having resolved the questions submitted favorably to them. The paper title resting on two grants, calling for a common boundary, presented a question of location — the dividing line being established, there was no conflict. This question had been more than once before *597 this Court, either on the motion of the same or other parties, and the facts seemed quite familiar to my seniors in the Court. On each previous adjudication the location was identical with that now established, and then, as now, always satisfactory to each member of the Court, I think, whether on circuit or here. No complaint is now presented in the grounds of appeal, and hence this statement would be uncalled for, except that, in the argument, the zeal of counsel led him to press the injustice which had been done his client herein, as a circumstance entitled to consideration in connection with one of the grounds of appeal.
The plaintiff failing to locate his grant, which was the senior, so as to include the lands in dispute, relied also on his possession as giving title against all others, and especially these defendants, claiming, as they did, through Mrs. B. Worthington. The facts proven were fully, and, as regards this plaintiff, touching the effect to be given to the declarations of Mrs. Worthington, most favorably submitted to the jury. The instructions of the presiding Judge (if, indeed, there was a shade of error.) consisted in that. In law, upon the proof, we think the verdict may be fully vindicated. Upon all the points we are constrained to say that we are of one mind — that, as to the instructions to the jury, the plaintiff has no cause of complaint, and, as to the verdict of the jury, the truth of the case has been reached.
The principles involved are not stated and elucidated, because those applied are such as have been maintained and enforced by the whole current of decisions.
The ground of difficulty, and that on which plaintiff’s counsel mainly relied, is the last' one made in the brief, alleging an improper interference with the jury by one of the defendants pending the trial.
This ground rests on affidavits made some weeks after the adjournment of the Court, and now submitted. They disclose an accidental or intentional meeting of some of the jurors charged with the case, and one of the defendants and his brother-in-law, at a neighboring liquor shop, during an interval, *598 and immediately on the adjournment of the Court, about 10* o’clock at night, the trial having progressed, hut yet pending— the expenses of the drinking being defrayed by some one not very clearly, indicated, but most likely the defendant. The stay was not shewn to be protracted, or the drinking excessive, but during a portion of the time the defendant was seen apart and in conversation with one of the jurors, whose name is not disclosed. The fact of the division in the jury-room, the mode adopted to ensure a decision, and the turning over of one of the jurors, by which the' verdict was rendered, are also Set forth.
In delivering the opinion of the Court, I do not feel called' on to speak as to the value' of trial by jury, or of the importance of preserving it in its greatest purity. Every care has been taken by our laws to protect this sacred right, and secure impartial verdicts. The avenues to the jury box are guarded, and all improper attempts to influence juries are rebuked and prohibited by all possible means. But this Court cannot lend a ready ear to disclosures coming from the jury-room; the ends of public justice require some restraint upon the éxercise of a right to scarf and review the process by which jurors attain their conclusions. In Sheppard vs. Lark, (2 Bail. 576,) the Court manifest an inclination to look only to such gross misconduct as would be palpably subversive of the ends of justice. This door should not be opened too readily, and especially by encouraging jurors to promulgo their own disgrace.
The principal complaint is, that jurors 'suffered themselves to be approached by one of the parties, or his agent, in a way calculated to produce improper bias. In becoming the organ of this Court, I am not charged with an apology for any of the suspected actors on this occasion. Had the occurrences, which transpired, been brought to the view of the presiding Judge the next morning,-they would doubtless have been so impressed as not soon to have faded from the memory of those implicated.
Some certain rule on the subject now before the Court would be most acceptable ; it is not easily prescribed. I have examined the cases referred to in the argument, and such as I have been *599 able otherwise to collect, and at last it would seem that when questions for new trials arise, founded on such complaints, they must depend rather on judicial discretion, than upon any strict law or absolute right; and whether, as a consequence, in- any given case, the verdict should be avoided, must depend on the abuse presumed or proved to have followed, and the substantial justice of the case. (Graham on New Trials, 66, 85 ; Pulaski & Co. vs. Ward & Co., 2 Rich. 119.) Lapse of time in presenting such complaints is always an objection to their consideration. This case being yet within our control, upon appeal regularly prosecuted, we will not trench upon what seemed to be the understanding in Cohen vs. Robert, (2 Strob. 410.) Each of the jurymen implicated have not been served with copies of the affidavits, for although misconduct is attributed to the defendant, assuredly jurors do not escape the imputation 'when charged with drinking at the expense and holding conversation apart, at a late hour of the night, with a party to a suit then on trial before them. This should have been done according to the rule laid down in the case before referred to in 2 Rich. 122, and cases there enumerated.
The affidavits do not disclose any allusion to the case — “ any solicitation of the juror, or belaboring him, as expressed by the old writers, or the exercise of personal influence to affect his decision, which is to be reprobated and suppressed,” — a rule recognized in the case in 2 Strob. 410. Looking to the occasion, the place and attendant circumstances, the conduct of these parties cannot well be too strongly reprehended.
But, unfortunately for the country, these crowds of promiscuous persons at drinking establishments are too common, especially under eover of the night. A rigid scrutiny of the material composing such assemblages, might often lead to strange disclosures. We would not feel justified in saying, because parties and jurors meet at these places of too common resort, that corruption has been thereby engendered. The facts furnished are not sufficiently specific to indicate the abuse, or in any satisfactory way to enable the Court to trace the result to this cause; and *600 looking to the end, we are not warranted in straining an inference.
We are not of opinion, therefore, that the exercise of a sound discretion would authorize the avoidance of a verdict in the justice of which we all so fully concur.
The motion for new trial is dismissed.
O’Neall, Evans, Withers and Fkost, JJ., concurred.
Motion dismissed.